**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **Leaha Sweet and Bradley Dean Taylor,** on behalf of **themselves** and all others similarly situated,<br><br>     **Plaintiffs,**<br><br>     **v.**<br><br>**BJC Heath System d/b/a BJC Healthcare, and BJC Collaborative, LLC,**<br><br>     **Defendants.** | Case No.:  20-CV-947-NJR |

---

**FIRST AMENDED CLASS ACTION COMPLAINT**

---

COME NOW Leaha Sweet and Bradley Dean Taylor, individually and on behalf of all others similarly situated, by and through their attorneys, and file this First Amended Class Action Complaint against Defendants BJC Heath System d/b/a BJC Healthcare and BJC Collaborative, LLC and allege as follows:

**INTRODUCTION**

1.    American society places a high value on individual rights, personal choice, and a private sphere protected from intrusion. Medical records can include some of the most intimate details about a person's life. They document a patient's physical and mental health, and can include information on social behaviors, personal relationships, and financial status. Accordingly, surveys show that medical privacy is a major concern for many Americans.

2.    Defendants own and operate hospitals that treat Illinois consumers and in the process are entrusted with these intimate details about each of their patients. But Defendants failed to safeguard these intimate details. Instead, on March 6, 2020 three BJC employees succumbed to a phishing attack and allowed hackers to access their email accounts which contained the confidential records of

thousands of patients at 19 BJC and affiliated hospitals. These email accounts contained patients' names, medical record numbers, patient account numbers, dates of birth, provider names, visit dates, medications, diagnoses, and testing information, health insurance information, Social Security numbers, and driver's license numbers. Plaintiffs are two of the thousands of patients who received notice from BJC that their private information was exposed in this attack.

3.     Plaintiffs bring this action, individually and on behalf of all similarly situated persons who are citizens of Illinois ("Class Members"), whose personally identifiable information and health information was exposed in this attack. The information that Defendants allowed to be exposed is all that a needed for identity thieves to create fake identities, fraudulently obtain loans and tax refunds, and destroy a consumer's credit-worthiness. And because Social Security numbers do not expire and are almost impossible to change, thieves will be able to do so for years to come.

4.     Plaintiffs and Class Members now face a substantial and imminent risk of identity theft and resulting losses, a risk that will continue so long as Social Security numbers have such a critical role in consumers' financial lives.

5.     Consequently, Class Members have or will have to spend significant time and money to protect themselves, including, but not limited to: the cost of responding to the data breach, cost of conducting a damage assessment, mitigation costs, costs to rehabilitate Plaintiffs' and Class Members' PHI, and costs to reimburse from losses incurred as a proximate result of the breach.

6.     Additionally, as a result of Defendants' failure to follow contractually-agreed upon, federally-prescribed, industry-standard security procedures, Plaintiffs and Class Members received a diminished value of the services they paid Defendants to provide.

## PARTIES, JURISDICTION AND VENUE

7.     Plaintiff, Leaha Sweet is a citizen and resident of Madison County, Illinois.

8.     Plaintiff, Bradley Dean Taylor, is a citizen and resident of Madison County, Illinois.

9.    Plaintiffs, individually and behalf of all others similarly situated, believe the damages in this matter exceed $5,000,000, exclusive of interest and costs.

10.    Defendant BJC Heath System d/b/a BJC Healthcare ("BJC") is a Missouri nonprofit corporation that maintains its principal place of business in Missouri.

11.    Defendant BJC Collaborative, LLC ("Collaborative") is a Missouri Limited Liability Company with members that include BJC HealthCare of St. Louis, Mo., Memorial Health System of Springfield, Ill., Blessing Health System of Quincy, Ill., Southern Illinois Healthcare of Carbondale, Ill., and Sarah Bush Lincoln Health System of Mattoon, Ill. One or more of BJC Collaborative's members are citizens of Illinois.

12.    Since 2019, the members of the Collaborative have pooled their resources, knowledge, and expertise in developing solutions to common challenges in the areas of virtual care, cybersecurity, and government relations. Collaborative's Cybersecurity Council comprises experts who focus on keeping patient data and hospital networks across the Collaborative safe.

13.    The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) in that this is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and in which any member of the class of plaintiffs is a citizen of a state different from any defendant.

14.    This Court has general and specific jurisdiction over defendants.

15.    Defendants have continuous and systematic general business contacts with Illinois.

16.    Collaborative is a citizen of Illinois.

17.    BJC is the owner and operator of several hospitals and medical practices in Illinois. BJC also advertises and solicits business in Illinois. In 2019, BJC's Alton Memorial Hospital employed 871 people, treated almost 40,000 patients and generated $155 million in net revenue. BJC's Memorial Hospital Belleville employed 1,670 people, treated more than 60,000 patients and

generated $228 million in net revenue. BJC's Memorial Hospital East in Shiloh, Illinois, employed 559 people, treated more than 28,000 patients and generated $77 million in net revenue. These contacts are so extensive as to make it fundamentally fair to require BJC Health to answer in any Illinois court in any litigation arising out of any transaction or occurrence taking place anywhere in the world.

18.     Plaintiff Bradley Dean Taylor has been a patient of BJC's Alton Memorial Hospital. Taylor purchased services from BJC in Alton, Illinois. Taylor paid his bills from BJC in Madison County, Illinois. Taylor provided BJC with his personal financial and health information in Illinois. Taylor received notice from BJC of its exposure of his personal and health information in Madison County, Illinois. And after the notice, Taylor has expended time and effort and suffered damages as a result of Defendants' breach in Madison County, Illinois. Among other things, as a result of Defendants' breach, Taylor spent time and effort to replace his debit card and finding a new medical provider. Given the highly-sensitive nature of the information stolen, Taylor remains at a substantial and imminent risk of future harm.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district.

**FACTS COMMON TO ALL COUNTS**

20.     Plaintiffs and Class Members are customers of BJC who provided payment to BJC for certain services, part of which was intended to pay the administrative costs of securing their personal and health information.

21.     Plaintiffs and Class Members contracted for services that included a promise by BJC to safeguard, protect, and not disclose their personal information. On information and belief, BJC delegated that obligation to Collaborative. And neither BJC nor Collaborative delivered on that promise. Instead, Plaintiffs and Class Members' private information was exposed, contrary to Plaintiffs'

and Class Members' expectations.

22.     On March 6, 2020, three BJC employees succumbed to a phishing attack and allowed hackers to access their email accounts which contained the confidential records of thousands of patients at 19 BJC and affiliated hospitals. These email accounts contained patients' names, medical record numbers, patient account numbers, dates of birth, provider names, visit dates, medications, diagnoses, and testing information, health insurance information, Social Security numbers, and driver's license numbers.

23.     On information and belief, the hackers obtained this private information and have used and will use Plaintiffs' and Class Members' private and health information for hackers' own purposes and to Plaintiffs' and Class Members' detriment.

24.     As a proximate result of Defendants' wrongful acts and omissions, Plaintiffs and the Class Members have suffered injury, harm, and damages, including, but not limited to, loss of monies paid to BJC to protect their confidential information, and Plaintiffs and Class Members have and will have to spend significant time and money to protect themselves, including, but not limited to: the cost of responding to the data breach, cost of conducting a damage assessment, costs to obtain credit reports, costs to obtain future credit reports, costs for credit monitoring, costs for insurance to indemnify against misuse of identity, costs to rehabilitate Plaintiffs' and Class Members' PHI, and costs to reimburse from losses incurred as a proximate result of the breach. All of these damages are fairly traceable to Defendants' actions.

**HIPAA & HITECH ACT REQUIREMENTS**

25.     Under HIPAA and the HITECH Act, BJC must implement policies and procedures to limit physical access to their electronic information systems and the facility or facilities in which they are housed, while ensuring that properly authorized access is allowed. *See* 45 C.F.R. § 164.310.

26.     Specifically, BJC must ensure the confidentiality, integrity, and availability of all electronic PHI

it creates, receives, maintains, or transmits; protect against any reasonably anticipated threats or hazards to the security or integrity of such information and protect against any reasonably anticipated uses or disclosures of such information that are not permitted. *See* 45 C.F.R. § 164.306.

27.     BJC must also implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights as specified in 45 C.F.R. § 164.308(a)(4). A few of these policies and procedures include, but are not limited to: implementing a mechanism to encrypt and decrypt electronic confidential information; implementing hardware, software, and/or procedural mechanisms that record and examine activity in information systems that contain or use electronic PHI; implementing procedures to verify that a person or entity seeking access to electronic PHI is the claimed person; implementing technical security measures to guard against unauthorized access to electronic PHI that is being transmitted over an electronic communications network; and implementing security measures to ensure that electronically transmitted electronic PHI is not improperly modified without detection until disposed of. *See* 45 C.F.R. § 164.312.

28.     When BJC permits agents to create, receive, maintain, or transmit electronic PHI, BJC must ensure those agents comply with HIPAA and the HITECH Act. *See* 45 C.F.R. § 164.314.

29.     BJC must also conduct accurate and thorough assessments of the potential risks and vulnerabilities to the confidentiality, integrity, and availability of electronic PHI held by BJC or its agents; implement procedures to regularly review records of information system activity, such as audit logs, access reports, and security incident tracking reports; and implement procedures for guarding against, detecting, and reporting malicious software. *See* 45 C.F.R. § 164.308.

30.     BJC, Collaborative and their agents did not comply with any of the foregoing requirements.

**DEFENDANTS DID NOT PROTECT PLAINTIFF'S AND CLASS MEMBERS' PHI**

31.    BJC did not comply with, and therefore violated, HIPAA and HITECH Act.

32.    BJC, Collaborative and its agents stored Plaintiffs' and Class Members' PHI in an unprotected, unguarded, unsecured, and/or otherwise unreasonably protected electronic and/or physical location.

33.    BJC, Collaborative and its agents did not adequately encrypt, if at all, Plaintiffs' and Class Members' PHI.

34.    BJC, Collaborative and its agents did not provide adequate security measures to protect Plaintiffs' and Class Members' PHI.

35.    On April 8, 2014, the FBI issued a Private Industry Notification to the healthcare industry, warning:

> Cyber actors will likely increase cyber intrusions against health care systems - to include medical devices - due to mandatory transition from paper to electronic health records (EHR), lax cybersecurity standards, and a higher financial payout for medical records in the black market ... the health care industry is not technically prepared to combat against cyber criminals' basic cyber intrusion tactics, techniques, and procedures (TTPs), much less against more advanced persistent threats (APTs). The health care industry is not as resilient to cyber intrusions compared to the financial and retail sectors, therefore the possibility of increased cyber intrusions is likely.

36.    The notification continued by detailing the value of Plaintiffs' and Class Members' PHI: "Cyber criminals are selling the information on the black market at a rate of $50 for each partial EHR, compared to $1 for a stolen social security number or credit card number. EHR can then be used to file fraudulent insurance claims, obtain prescription medication, and advance identity theft."

37.    The data accessed, copied, and transferred included information protected under HIPAA because it included patient names, addresses, birthdates, telephone numbers, and social security numbers and may have included patient credit card, medical, and/or clinical information.

38.    Upon information and belief, BJC, Collaborative and their agents did not design and implement policies and procedures for the security of electronically stored PHI.

39.    If <u>Defendants or their agents</u> did design and implement policies and procedures for the security of electronically stored PHI, these policies and procedures failed to adhere to reasonable and best industry practices in safeguarding PHI.

40.    Upon information and belief, <u>Defendants and their agents</u> failed to encrypt, or adequately encrypt, <u>Plaintiffs'</u> and Class Members' PHI.

41.    By failing to fulfill its promise to protect <u>Plaintiffs'</u> and Class Members' PHI, <u>Defendants have</u> deprived <u>Plaintiffs</u> and Class Members of the benefit of the bargain. As a result, Defendants cannot equitably retain payment from <u>Plaintiffs</u> and Class Members—part of which was intended to pay for the administrative costs of data security—because <u>Defendants</u> did not properly secure <u>Plaintiffs'</u> and Class Members' information and data.

## CLASS ACTION ALLEGATIONS

33.    <u>Class:</u> <u>Plaintiffs bring</u> this action on behalf of <u>themselves</u> and a statewide class of similarly situated individuals, defined as follows:

> All citizens of Illinois <u>whose personal and health information in the possession of BJC was exposed to an unauthorized person</u> on or around March 6, 2020.

34.    Excluded from the Class Members are (i) any judge presiding over this action and members of their families; (ii) <u>Defendants,</u> <u>Defendants'</u> subsidiaries, <u>parents'</u> successors, predecessors, and any entity in which <u>Defendants</u> or its parents have a controlling interest and its current or former offices and directors; (iii) employees who (a) have or had a managerial responsibility on behalf of the organization, (b) whose act or omission in connection with this matter may be imputed to the organization for purposes of civil liability, or (c) whose statement may constitute an admission on the part of <u>Defendants;</u> (iv) persons who properly execute and file a timely request for exclusion from the class; (v) the attorneys working on <u>Plaintiffs'</u> claims; and (vi) the legal representatives, successors, or assigns of any such excluded persons, as well as any individual who contributed to the unauthorized access of the data stored by <u>Defendants.</u>

35.     Numerosity. Upon information and belief, the Class Members includes thousands, making their individual joinder herein impracticable. Although the exact number of Class Members and their addresses are unknown to Plaintiffs, they are readily ascertainable from Defendants' records. Class Members may be notified of the pendency of this action by mail and/or electronic mail, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

36.     Typicality. Plaintiffs' claims are typical of the Class Members because Plaintiffs and the Class Members sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiffs and the Class Members.

37.     Adequacy. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class Members she seeks to represent. Plaintiffs have retained competent and experienced counsel, and Plaintiffs intends to prosecute this action vigorously. The interest of Class Members will be treated fairly and adequately protected by Plaintiffs and their counsel.

38.     Predominance and Superiority. This class action is appropriate for certification because class proceedings are superior to all over available methods for the fair and efficient adjudication of this controversy and joinder of all Class Members is impracticable. The damages suffered by the individual Class Members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual Class Members to obtain effective relief from Defendants' misconduct. Even if Class Members could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

39.   <u>Commonality.</u> Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual members, and include, but are not limited to:

a.   Whether <u>Defendants were</u> negligent in collecting, storing, protecting, and/or securing <u>Plaintiffs'</u> and the Class Member's PHI;

b.   Whether <u>Defendants</u> took reasonable steps and measures to safeguard <u>Plaintiffs'</u> and Class Members' PHI;

c.   Whether <u>Defendants</u> breached its duty to exercise reasonable care in handling <u>Plaintiffs'</u> and Class Members' PHI by storing that information in the manner alleged herein;

d.   Whether <u>Defendants</u> disclosed <u>Plaintiffs'</u> and Class Members' PHI;

e.   Whether implied or express contracts existed between <u>BJC</u> and <u>Plaintiffs</u> and Class Members;

f.   Whether <u>Plaintiffs</u> and the Class Members are at an increased risk of identity theft or other malfeasance as a result of <u>Defendants'</u> failure to protect their PHI;

g.   Whether <u>Defendants</u> stored PHI in a reasonable manner consistent with industry standards;

h.   Whether protecting <u>Plaintiffs'</u> PHI was a service provided by <u>Defendants</u>;

i.   Whether <u>Defendants have</u> unlawfully retained payment from <u>Plaintiffs</u> and Class Members because of <u>Defendants'</u> failure to fulfill its agreement to protect, secure, keep private, and not disclose <u>Plaintiffs</u> and Class Members' PHI; and

j.   Whether and to what extent <u>Plaintiffs</u> and the Class Members have sustained damages.

40.   Plaintiff reserves the right to revise Class definitions and questions based upon facts learned in discovery.

## COUNT I: UNJUST ENRICHMENT (AGAINST ALL DEFENDANTS)

41.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

42.     BJC received payment from Plaintiff and Class Members to perform services that included protecting, securing, keeping private, and not disclosing Plaintiffs' and Class Members' PHI.

43.     BJC agreed to ensure that its agents complied with the same obligations as BJC with respect to the protection of Plaintiffs' and Class Members' PHI.

44.     Collaborative received value for accepting BJC's delegation to safeguard, protect, and not disclose their personal information.

45.     BJC, Collaborative, and their agents did not protect, secure, and/or keep private Plaintiffs' and Class Members' PHI and/or disclosed Plaintiffs' and Class Members' PHI, but retained Plaintiffs' and Class Members' payments.

46.     Defendants have knowledge of said benefit.

47.     Defendants have been unjustly enriched, and it would be inequitable for Defendants to retain Plaintiffs' and Class Members' payments.

48.     As a result, Plaintiffs and Class Members have been proximately harmed and/or injured.

## COUNT II: BREACH OF CONTRACT (EXPRESS AND/OR IMPLIED) (AGAINST BJC ONLY)

49.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein, excluding Count I.

50.     Plaintiffs and Class Members paid money to BJC in exchange for services, which included promises to secure, safeguard, protect, keep private, and not disclose Plaintiffs' and Class Members' PHI.

51.     In documents that memorialize the obligations of the parties, BJC promised Plaintiffs

and Class Members that <u>BJC</u> would protect, secure, keep private, and not disclose <u>Plaintiffs'</u> and Class Members' PHI.

52.    These documents were provided in a manner and during a time where they became part of the agreement for services.

53.    <u>BJC</u> promised to comply with all HIPAA standards and to ensure <u>Plaintiffs'</u> and Class Members' PHI was protected, secured, kept private, and not disclosed.

54.    In the alternative, to the extent it was not expressed or, again in the alternative, an implied contract existed in the absence of an express contract whereby, <u>BJC</u> promised to comply with all HIPAA standards and regulations and to ensure <u>Plaintiffs'</u> and Class Members' PHI was secured, safeguarded, kept private, protected, and not disclosed to third parties.

55.    To the extent it was not expressed, an implied contract was created whereby <u>BJC</u> promised to safeguard <u>Plaintiffs'</u> and Class Members' health information and PHI from being accessed, copied, and transferred by or disclosed to third parties.

56.    In the alternative, an express contract did not exist, but an implied contract existed between the parties whereby, in exchange from monies from <u>Plaintiffs</u> and Class Members, <u>BJC</u> agreed to protect, safeguard, secure, keep private, and not disclose to third-parties Plaintiff's and Class Members' PHI.

57.    Under the implied contract, <u>BJC</u> was also obligated to provide <u>Plaintiffs</u> and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PHI.

58.    <u>BJC</u> agreed to ensure <u>that its agents</u> complied with the same obligations as <u>BJC</u> with respect to the protection of <u>Plaintiffs'</u> and Class Members' PHI.

59.    Defendants did not secure, safeguard, protect, and/or keep private <u>Plaintiffs'</u> and Class Members' PHI and/or disclosed their PHI to third parties, and therefore <u>BJC</u> breached its contracts

with <u>Plaintiffs</u> and Class Members.

60.     <u>Defendants</u> allowed third parties to access, copy, and/or transfer Plaintiffs' and Class Members' health information and PHI, and therefore <u>BJC</u> breached its contracts with <u>Plaintiffs</u> and Class Members.

61.     Furthermore, <u>Defendants'</u> failure to satisfy its confidentiality and privacy obligations resulted in <u>BJC</u> providing services to <u>Plaintiffs</u> and Class Members that were of a diminished value.

62.     As a result, <u>Plaintiffs</u> and Class Members have been harmed, damaged, and/or injured.

### COUNT III: NEGLIGENCE (AGAINST ALL DEFENDANTS)

63.     <u>Plaintiffs re-allege</u> and incorporate by reference all preceding paragraphs as if fully set forth herein, excluding Counts I and II.

64.     <u>BJC</u> requested and came into possession of <u>Plaintiffs'</u> and Class Members' PHI and had a duty to exercise reasonable care in securing, safeguarding, keeping private, and protecting such information from being accessed by and disclosed to third parties. <u>BJC</u>'s duty arose from the industry standards discussed above and <u>BJC's</u> relationship with <u>Plaintiffs</u> and Class Members.

65.     <u>BJC and its agents</u> had a duty to have procedures in place to detect and prevent improper access and misuse of <u>Plaintiffs'</u> and Class Members' PHI. The breach of security, unauthorized access, transfer of data, and resulting injury to <u>Plaintiffs</u> and the Class Members were reasonably foreseeable, particularly given Defendants' inadequate data security systems and failure to adequately encrypt the data.

66.     <u>BJC</u> agreed to ensure its agents complied with the same obligations as <u>BJC</u> with respect to the protection of <u>Plaintiffs'</u> and Class Members' PHI.

67.     On information and belief, BJC delegated those obligations to Collaborative and Collaborative accepted that delegation.

68.     Defendants had duties defined by HIPAA, and they breached those duties.

69.     Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class Members by failing to implement industry standard protocols and/or exercise reasonable care in protecting, securing, keeping private, safeguarding, and not disclosing Plaintiffs' and Class Members' PHI.

70.     Defendants, through their actions and/or omissions, breached their duty to Plaintiffs by failing to have procedures in place to detect and prevent access to Plaintiffs' and Class Members' PHI by unauthorized persons.

71.     But for Defendants' breach of duties, Plaintiffs' and Class Members' PHI would not have been accessed, copied, transferred, and/or disclosed.

72.     Plaintiffs' and Class Members' PHI was accessed, copied, transferred, and/or disclosed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding, securing, protecting, and keeping private such information by adopting, implementing, and maintaining appropriate security measures and encryption.

73.     As a result, Plaintiffs and Class Members have been harmed, damaged, and/or injured.

## COUNT IV: CONSUMER FRAUD ACT (AGAINST ALL DEFENDANTS)

74.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein, excluding Counts I, II, and III.

75.     At all times relevant hereto, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, (hereinafter "ICFA") prohibited "the use of any deception, fraud, false promise misrepresentation or concealment, suppression or omission of any material facts … in the conduct of any trade of commerce" and declared such acts or practices unlawful.

76.     Defendants' acts and omissions alleged in this Complaint occurred in commerce.

77.     BJC represented to Plaintiffs and Class Members that it had the capacity to protect Plaintiffs' PHI. This was false.

78.     BJC represented to Plaintiffs and Class Members that it would comply with state and federal law regarding protection of Plaintiffs' and Class Members' PHI. This was false.

79.     BJC represented to Plaintiffs and Class Members that it would protect Plaintiffs' PHI. This was false.

80.     BJC violated the ICFA by the use of deceptive, false, and misleading misrepresentations or omissions of material fact in connection with securing Plaintiffs' PHI. In particular, BJC lacked the capacity to protect Plaintiffs' PHI, BJC, Collaborative and its agents failed to comply with applicable state and federal law regarding protection of Plaintiffs' and Class Members' PHI, and Defendants failed to adequately protect Plaintiffs' and Class Members' PHI.

81.     BJC intended that Plaintiffs and Class Member would rely on its deceptive, false, and misleading misrepresentations or omissions of material fact when entrusting their PHI to Defendant.

82.     As a direct and proximate result of BJC's violation of the ICFA, Plaintiffs' and Class Members' PHI was entrusted to Defendants and was improperly accessed, copied, transferred, and/or disclosed.

83.     As a direct and proximate result of BJC's violation of the ICFA, Plaintiffs and Class Members have been harmed, damaged, and/or injured.

84.     Defendants' conduct described in this claim for relief was outrageous because its acts showed a reckless disregard of the Plaintiffs' and Class Members' rights.

**COUNT V: NEGLIGENCE PER SE (AGAINST ALL DEFENDANTS)**

85.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein, excluding Count I, II, III, and IV.

86.     Defendants violated HIPAA by:

a.   Failing to ensure the confidentiality and integrity of electronic PHI Defendants created, received, maintained, and transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

b.   Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

c.   Failing to implement technical policies and procedures governing the receipt and removal of hardware and electronic media containing electronic PHI into and out of a facility to maintain security, in violation of 45 C.F.R. § 164.310(d)(1);

d.   Failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1);

e.   Failing to identify and respond to suspected or known security incidents or mitigate, to the extent practicable, harmful effects of security incidents that are known to Defendants, in violation of 45 C.F.R. § 164.308(a)(6)(ii);

f.   Failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 C.F.R. § 164.306(a)(2);

g.   Failing to protect against reasonably-anticipated impermissible uses or disclosures of electronic PHI, in violation of 45 C.F.R. § 164.306(a)(3);

h.   Failing to ensure compliance with the HIPAA security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(94);

i.   Impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 C.F.R. § 164.502 *et seq.*;

j.   Failing to effectively train all members of their workforce (including independent contractors involved in the data breach) on the policies and procedures for PHI, as necessary and appropriate for the members of its workforce to carry out functions and

16

maintain security of PHI, in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

k.   Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

87.   BJC agreed to ensure that its agents complied with the same obligations as BJC with respect to the protection of Plaintiffs' and Class Members' PHI.

88.   Defendants' violation of HIPAA resulted in an injury to Plaintiffs and Class Members.

89.   Plaintiffs and Class Members fall within the class of persons HIPAA was intended to protect.

90.   The harms Defendants caused to Plaintiffs and Class Members are injuries resulting from the type of behavior HIPAA was intended to prevent.

91.   As a result, Plaintiffs and Class Members have been harmed, damaged, and/or injured.

## COUNT VI: BREACH OF COVENANT OF GOOD FAITH & FAIR DEALING (AGAINST ALL DEFENDANTS)

92.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein, excluding Counts I, II, III, IV, and V.

93.   Every contract contains a covenant of good faith and fair dealing that prohibits a contracting party from intentionally depriving the other contracting party of the fruits of the contract ("Covenant").

94.   Through the conduct stated in this Complaint, Defendants breached the Covenant between Defendants and Plaintiffs and Class Members.

95.   Defendants agreed to ensure Agents complied with the same obligations as Defendants

with respect to the protection of <u>Plaintiffs'</u> and Class Members' PHI.

96.     <u>Defendants'</u> acts and omissions deprived <u>Plaintiffs</u> and Class Members from receiving the fruits of the agreement.

97.     <u>Defendants'</u> breach of the Covenant proximately caused <u>Plaintiffs</u> and Class Members to suffer harm and damages.

### COUNT VII: INVASION OF PRIVACY (AGAINST ALL DEFENDANTS)

98.     <u>Plaintiffs</u> <u>re-allege</u> and <u>incorporate</u> by reference all preceding paragraphs as if fully set forth herein, excluding Counts I, II, III, IV, V, and VI.

99.     <u>Defendants'</u> misconduct, as described herein, and failure to encrypt, protect, secure, keep private, or otherwise keep <u>Plaintiffs'</u> and Class Members' PHI constituted an invasion of <u>Plaintiffs'</u> and Class Members' privacy.

100.    <u>BJC</u> agreed to ensure <u>its agents</u> complied with the same obligations as <u>BJC</u> with respect to the protection of <u>Plaintiffs'</u> and Class Members' PHI.

101.    Said PHI is not a matter of public concern.

102.    <u>Defendants'</u> failures, acts, omissions, and/or misconduct resulted in an unreasonable intrusion into the private lives and matters of <u>Plaintiffs</u> and Class Members.

103.    <u>Defendants'</u> failures, acts, omissions, and/or misconduct constituted a public disclosure of private facts, the nature of which a reasonable person of ordinary sensibilities would find objectionable and offensive.

104.    As a   direct result of <u>Defendants'</u> failures and misconduct, <u>Plaintiffs'</u> and Class Members' PHI was disclosed to the public.

### COUNT VIII: VICARIOUS LIABILITY (AGAINST ALL DEFENDANTS)

105.    <u>Plaintiffs re-allege</u> and <u>incorporate</u> by reference all preceding paragraphs as if fully set forth herein, excluding Counts I, II, III, IV, V, VI, and VII.

18

106.    Defendants served as the employer and/or master of its employees, staff, or medical professionals.

107.    Defendants have vicarious liability for the acts and omissions of all persons or entities under Defendants' control, either directly or indirectly, including its employees, agents, consultants, medical directors, and independent contracts, whether in-house or outside entities, individuals, or agencies causing or contributing to the injuries, damage, and harm to Plaintiffs and Class Members.

108.    Further, Defendants' employees, staff, agents, or medical professionals were in the line and scope of employment when they performed or failed to perform acts and/or omissions alleged herein.

109.    Additionally, the acts and/or omissions Defendants' employees, staff, agents, or medical professionals performed or failed to perform were ratified by Defendants.

110.    Defendants are vicariously liable for the acts of their employees, staff, agents, or medical professionals.

111.    Such conduct was the proximate cause of Plaintiffs' and Class Members' injury, damage, and harm.

### COUNT IX: BAILMENT (AGAINST ALL DEFENDANTS)

112.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein, excluding Count I, II, III, IV, V, VI, VII, and VIII.

113.    Plaintiffs and Class Members delivered their personal and financial information to Defendants for the exclusive purpose of obtaining healthcare.

114.    In delivering personal and financial information to Defendants, Plaintiffs and Class Members intended and understood Defendants would adequately safeguard such information.

115.    Defendants agreed to ensure their agents complied with the same obligations with respect to the protection of Plaintiffs' and Class Members' PHI.

19

116.    Defendants accepted possession of Plaintiffs' and Class Members' personal and financial information.

117.    By accepting possession of Plaintiffs' and Class Members' personal and financial information, Defendants understood Plaintiffs and Class Members expected Defendants to adequately safeguard such personal and financial information, establishing a bailment (or deposit) for the mutual benefit of the parties.

118.    During the bailment (or deposit), Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care, diligence, and prudence in protecting Plaintiffs' and Class Members' personal and financial information.

119.    Defendants breached this duty of care by failing to take appropriate measures to safeguard and protect Plaintiffs' and Class Members' personal and financial information, resulting in the unlawful and unauthorized access to and misuse of Plaintiffs' and Class Members' personal and financial information.

120.    Defendants further breached its duty to safeguard Plaintiffs' and Class Members' personal and financial information by failing to timely and accurately notify Plaintiffs and Class Members that their personal and financial information was compromised as a result of the data breach.

121.    Defendants failed to return, purge, or delete Plaintiffs' and Class Members' personal and financial information after the bailment (or deposit) and within the time limits allowed by law.

122.    As a direct and proximate result of Defendants' breach of its duty, Plaintiffs and Class Members suffered reasonably foreseeable consequential damages, including, but not limited to, the damages set forth above.

123.    As a direct and proximate result of Defendants' breach of its duty, Plaintiffs' and Class Members' personal and financial information entrusted to Defendant during the bailment (or deposit)

was damaged and its value diminished.

## RELIEF REQUESTED

Wherefore, <u>Plaintiffs</u>, individually and on behalf of all other similarly situated, demands judgment in <u>their</u> favor and against <u>Defendants</u> as follows:

a. Certify this case as a class action on behalf of the above-described Class Members and, if necessary, subclasses, and appoint <u>Plaintiffs</u> as class representatives and undersigned counsel as lead counsel;

b. Find that <u>Defendants</u> are liable under all legal claims asserted herein for its failure to safeguard, secure, protect, keep private, and not disclose <u>Plaintiffs'</u> and Class Members' PHI;

c. Award injunctive and other equitable relief as necessary to protect the interests of the Class Members, including an Order:

    i. prohibiting <u>Defendants</u> from engaging in the wrongful and unlawful acts described herein;

    ii. requiring <u>Defendants</u> to protect all data collected through the course of <u>their</u> business in accordance with HIPAA and industry standards;

    iii. requiring <u>Defendants</u> to provide lifetime consumer credit protection and monitoring services for <u>Plaintiffs</u> and Class Members; and

    iv. requiring <u>Defendants</u> to provide lifetime consumer credit insurance to provide coverage for unauthorized uses and disclosures of <u>Plaintiffs'</u> and Class Members' personal information, medical information, and financial information;

d. Award damages, including statutory damages where applicable and punitive damages, to <u>Plaintiffs</u> and the Class Members in an amount to be determined at trial;

e.   Award restitution for any identity theft and misuse of identity, including, but not limited to, payment of any other costs, including attorneys' fees incurred by the victim in clearing the victim's credit history or credit rating, or any costs incurred in connection with any civil or administrative proceeding to satisfy any debt, lien, or other obligation of the victim arising as a result of Defendants' actions;

f.   Award restitution in an amount to be determined by an accounting of the differences between the price Plaintiffs and Class Members paid in reliance upon Defendants' duty and promise to secure its members' PHI and the actual services - devoid of proper protection mechanisms - rendered by Defendants;

g.   Award Plaintiffs and Class Members their reasonable litigation expenses and attorneys' fees;

h.   Award Plaintiffs and Class members pre- and post-judgment interest to the maximum extent allowable by law; and

i.   Award such other and further legal and equitable relief as equity and justice may require.

Dated:  December 14, 2020                Respectfully Submitted,

                                         /s/ Troy Walton
                                         WALTON TELKEN, LLC
                                         Troy E. Walton
                                         241 N. Main Street
                                         Edwardsville, IL 62025
                                         (618) 307-9880
                                         twalton@waltontelken.com

                                         &

                                         TORHOERMAN LAW LLC
                                         Kenneth J. Brennan

Tyler Schneider
210 South Main Street
Edwardsville, IL 62025
(618) 656-4400
kbrennan@thlawyer.com
tyler@thlawyer.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon all counsel of record through the Court's electronic filing system this 14th day of December 2020.0

/s/ Troy Walton