# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| Leaha Sweet and Bradley Dean Taylor, on behalf of themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 20-CV-947-NJR |
| v. | ) ) ) | |
| BJC Heath System d/b/a BJC Healthcare, and BJC Collaborative, LLC, | ) ) ) | |
| Defendants. | ) ) | |

---

## PLAINTIFFS' COMBINED RESPONSE IN OPPOSITION
## TO DEFENDANTS' MOTIONS TO DISMISS

---

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**................................................................................................1

**ARGUMENT**.....................................................................................................3

    I.      The Court Has Personal Jurisdiction Over Defendants .............................3

    II.    Plaintiffs Have Adequately Alleged They Suffered Injury and Damages ...............6

    III.   The SAC States Claims for Which Relief May be Granted.................................15

          a.  Count I: Unjust Enrichment ........................................................15

          b.  Count II: Breach of Contract.........................................................17

          c.  Count III and V: Negligence and Negligence Per Se .....................................18

          d.  Count IV: Illinois Consumer Fraud Act..........................................20

          e.  Count VI: Breach of Covenant of Good Faith and Fair Dealing ....................22

          f.  Count X: Missouri Merchandising Practices Act ............................................23

**CONCLUSION** ................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*APS Sports Collectibles, Inc. v. Sports Time, Inc.,*
   299 F.3d 624 (7th Cir. 2002) ............................................................................. 22

*Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.,*
   332 S.W.3d 184 (Mo. Ct. App. 2010) .............................................................. 20

*Avery v. State Farm Mut. Auto. Ins. Co.,*
   216 Ill. 2d 100 (2005) ............................................................................... 20, 21

*Barron v. Ford Motor Co. of Canada,*
   965 F.2d 195 (7th Cir. 1992) ............................................................................. 16

*Benson v. Fannie May Confections Brands, Inc.,*
   944 F.3d 639 (7th Cir. 2019) ........................................................................ 7, 14

*Blythe Holdings, Inc. v. DeAngelis,*
   750 F.3d 653 (7th Cir. 2014) ............................................................................. 16

*Brandt v. Med. Defense Assocs.,*
   856 S.W.2d 667 (Mo. banc 1993) ..................................................................... 19

*Carlsen v. GameStop, Inc.,*
   833 F.3d 903 (8th Cir. 2016) ............................................................................. 15

*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.,*
   159 Ill.2d 137(1994) ......................................................................................... 19

*Craftwood II, Inc. v. Generac Power Sys., Inc.,*
   920 F.3d 479 (7th Cir. 2019) ............................................................................... 7

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014) ............................................................................................ 3

*Dieffenbach v. Barnes & Noble, Inc.,*
   887 F.3d 826 (7th Cir. 2018) ........................................................................ 8, 11

*Dominion Nutrition, Inc. v. Cesca,*
   467 F. Supp. 2d 870 (N.D. Ill. 2006) ............................................................... 18

*F.T.C. v. Wyndham Worldwide Corp.,*
   799 F.3d 236 (3d Cir. 2015) ............................................................................. 22

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court,*
   141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021) ............................................... 4, 5, 6

*Geske v. PNY Techs., Inc.,*
   2020 WL 7042887 (N.D. Ill. Nov. 30, 2020) ............................................. 7, 13

*Hanson-Suminski v. Rohrman Midwest Motors, Inc.,*
   386 Ill. App. 3d 585 (2008) ......................................................................... 6, 13

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,*
   131 Ill. 2d 145 (1989) ....................................................................................... 16

*Illinois Tool Works v. Sierracin Corp.,*
   134 Ill. App. 3d 63 (1st Dist. 1985) ............................................................ 22, 23

*In re Adobe Sys., Inc. Priv. Litig.,*
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ........................................................... 9, 10

*Intec USA, LLC v. Engle,*
   467 F.3d 1038 (7th Cir. 2006) ............................................................................. 3

*Int'l Administrators, Inc. v. Life Ins. Co. of N. Am.,*
   753 F.2d 1373 (7th Cir. 1985) ........................................................................... 16

*J.P. Morgan Chase Bank, N.A. v. McDonald,*
   760 F.3d 646 (7th Cir. 2014) ............................................................................................7

*K.A. by & Through B.W. v. Children's Mercy Hosp.,*
   2019 WL 2144815 (W.D. Mo. May 16, 2019) ................................................15, 20, 24

*Keeton v. Hustler Mag., Inc.,*
   465 U.S. 770 (1984) ........................................................................................................5

*Kelly v. Cape Cod Potato Chip Co.,*
   81 F. Supp. 3d 754 (W.D. Mo. 2015) ...........................................................................24

*Kuhns v. Scottrade, Inc.,*
   868 F.3d 711 (8th Cir. 2017) ........................................................................................14

*Lewert v. P.F. Chang's China Bistro, Inc.,*
   819 F.3d 963 (7th Cir. 2016) ................................................................................ Passim

*Lo v. Provena Covenant Med. Ctr.,*
   826 N.E.2d 592 (Ill. App. Ct. 2005) ............................................................................18

*Margolies v. McCleary, Inc.,*
   447 F.3d 1115 (8th Cir. 2006) ......................................................................................22

*Mitchell v. Blue Cross Blue Shield of N. Dakota,*
   953 F.3d 529 (8th Cir. 2020) ..................................................................................14, 15

*Murphy v. Stonewall Kitchen, LLC,*
   503 S.W.3d 308 (Mo. Ct. App. 2016) ......................................................................7, 14

*Perdue v. Hy-Vee, Inc.,*
   455 F. Supp. 3d 749 (C.D. Ill. 2020) ...........................................................................21

*Petrillo v. Syntex Lab'ys, Inc.,*
   148 Ill. App. 3d 581 (1986) ..........................................................................................19

*Pisciotta v. Old Nat. Bancorp,*
   499 F.3d 629 (7th Cir. 2007) ................................................................................8, 9, 13

*Remijas v. Neiman Marcus Grp., LLC,*
   794 F.3d 688 (7th Cir. 2015) ................................................................................ Passim

*Roberts v. Roberts,*
   580 S.W.3d 600 (Mo. Ct. App. 2019) ..........................................................................16

*Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc.,*
   532 S.W.3d 180 (Mo. Ct. App. 2017) ..........................................................................22

*Siegel v. Shell Oil Co.,*
   612 F.3d 932 (7th Cir. 2010) ........................................................................................16

*United States v. SCRAP,*
   412 U.S. 669 (1973) ........................................................................................................8

*Watson v. Wells Fargo Home Mortg., Inc.,*
   438 S.W.3d 404 (Mo. 2014) ..........................................................................................24

*Westfield, LLC v. IPC, Inc.,*
   816 F. Supp. 2d 745 (E.D. Mo. 2011) ..........................................................................20

*Wigod v. Wells Fargo Bank, N.A.,*
   673 F.3d 547 (7th Cir. 2012) ........................................................................................19

*Williams v. HSBC Bank USA, N.A.,*
   467 S.W.3d 836 (Mo. Ct. App. 2015) ..........................................................................23

**Statutes**

815 Ill. Comp. Stat. Ann. 505/2 .........................................................................................21

**Other Authorities**

3 Williston on Contracts § 7:41 (4th ed.) ............................................................... 18

17A Am. Jur. 2d Contracts § 149 ........................................................................... 18

Consumer Protection and the Law § 13:19 (Clark Boardman Callaghan 2020) .................................... 22

## INTRODUCTION

In 2014, the FBI warned the healthcare industry that hackers would increase their efforts to breach health care systems due to hospitals' generally lax cybersecurity standards and the greater value of stolen health records. SAC at ¶ 35. Stolen heath records can be used to file fraudulent insurance claims, obtain prescription medication, and advance identity theft justifying a higher financial payout for medical records in the black market, $50 for each partial health record compared to just $1 for a stolen social security number or credit card number. SAC ¶ 36.

Leaha Sweet and Bradley Dean Taylor were patients of BJC Health. Ms. Sweet was a patient at BJC's Missouri hospitals. Mr. Taylor was a patient of BJC's Illinois hospitals. In the course of that relationship, Sweet and Taylor agreed to pay BJC its fees and the hospital agreed to treat Sweet and Taylor with the degree of skill and learning ordinarily used under the same or similar circumstances and to protect their privacy by safeguarding their sensitive personal and private health information.

BJC did not keep its end of the deal. Instead, BJC delegated its cybersecurity to Collaborative and it left Sweet and Taylor's private information exposed and, last March, Sweet and Taylor and almost 300,000 other patients suffered the inevitable consequence–criminals exploited Defendants' lax security when three separate BJC employees allowed hackers access to patient names, medical record numbers, patient account numbers, dates of birth, provider names, visit dates, medications, diagnoses, and testing information, health insurance information, Social Security numbers, and driver's license numbers. SAC at ¶ 22.  Plaintiffs are two of the thousands of patients who received notice from BJC that their private information was exposed in the attack. SAC at ¶ 3. They brought this action on their own behalf and on behalf of BJC's Illinois patients whose personal health information was disclosed in the March 6, 2020 breach. SAC at ¶ 43.[1]

---

[1] A suit on behalf of BJC's Missouri patients whose personal health information was disclosed in the March 6, 2020 breach is pending in Missouri state court. That court recently denied BJC's motion seeking dismissal on similar grounds. *In re BJC Healthcare Data Breach Litig.* Cause No. 2022-cc09492 (Mo. 22d Jud. Cir., Apr. 27, 2021).

In their motions to dismiss, Defendants repeatedly mischaracterize Plaintiffs' allegations in an attempt to downplay the significance of the breach. Defendants refer to three separate BJC employees allowing hackers access to the confidential medical records of almost 300,000 patients euphemistically as a "data security incident." Collaborative's Mem. at 1. BJC's Mem. at 1. Without support, BJC claims the hackers only had "brief" access to its systems and only "may have" accessed Plaintiffs' data that was "buried" within the accessed accounts. BJC's Mem. at 2-3. Defendants also ask the Court to strictly construe Plaintiffs' complaint repeatedly advocating for a reading that fails to provide it reasonable inferences and calling Plaintiffs' well-pled allegations pure speculation. Defendants' name-calling aside, at this stage of the litigation the Court must assume Plaintiffs' allegations – not Defendants' – are true.

After trivializing the breach, Defendants' motions then argue that there was no harm done here, that Plaintiffs have no damages. BJC's Mem. at 1, 19. But the failure of BJC to live up to its end of the deal harmed Plaintiffs in numerous ways. First, they lost the benefit of their bargain. They paid for something (the safekeeping of their personal information) that they did not receive. Second, as a result of Defendants' failure to live up to their promises and obligations, Plaintiffs suffered consequential damages. Plaintiffs and the class have had to spend time and effort cleaning up Defendants' mess. And third, because of the nature of Defendants' failure, Plaintiffs are at substantial risk of future harm.

In this way, the case is no different than if a car dealer had sold Plaintiffs a car with no brakes. They received something less than they were promised and were damaged by the difference in price between what they bargained for and what they received–a car with brakes and one without. The car dealer could not defend the suit by contradicting Plaintiffs by claiming that Plaintiffs only contracted for a car, not brakes, or that there was not a line item for the cost of the brakes. Nor could the dealer avoid these damages because Plaintiffs did not suffer physical harm in the foreseeable crash,

or the car had yet to crash. Each of these items is damage and give Plaintiffs standing to assert their claims.

Plaintiffs have been damaged by Defendants' breach of their contractual, statutory, and common law obligations to protect Plaintiffs' confidential medical records. Defendants' motions to dismiss should be denied.

## ARGUMENT

### I.     The Court Has Personal Jurisdiction Over Defendants

BJC begins its motion by contending that Plaintiffs' complaint should be dismissed under Rule 12(b)(2) for failing to meet their burden of making a prima facie showing of personal jurisdiction. ECF No. 34, "BJC's Mem." at 5-12.[2] The gist of its argument is that despite its significant activities in Illinois and even though BJC has purposefully directed its activities at residents of the forum, and that Plaintiffs brought this suit in their home forum, where they felt the effects of BJC's misconduct, there is no jurisdiction because Plaintiffs' claims do not "arise out of or relate to" BJC's conduct in Illinois. BJC's Mem. at 9. In its view, its only conduct giving rise to this suit occurred in Missouri. BJC's Mem. at 11. Thus, according to BJC, interpreting the law to allow for specific jurisdiction over it would be "breathtakingly broad" and "eliminate entirely the constitutional protections afforded by personal jurisdiction[.]" BJC's Mem. at 11.

Those are particularly strong words when the day before BJC filed its motion the United States Supreme Court revisited what it means to "arise out of or relate to" when considering specific jurisdiction in *Ford Motor Co. v. Montana Eighth Judicial Dist. Court,* 141 S. Ct. 1017, 209 L. Ed. 2d 225

---

[2] Collaborative does not contest personal jurisdiction. Collaborative is an LLC and therefore has the citizenship of each of its members. *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006). Its members include Memorial Health System of Springfield, Blessing Health of Quincy, Southern Illinois Healthcare of Carbondale, and Sarah Bush Lincoln Health System of Mattoon all of which are Illinois corporations. SAC at ¶ 11. Because Collaborative is domiciled in Illinois, it is subject to general jurisdiction here. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). BJC contests this fact without explanation. BJC's Mem. at 1.

(2021).[3] *Ford Motor* concerned the consolidated appeals of two products liability suits against Ford. One suit was filed in Montana state court alleging design defect, failure to warn, and negligence from a fatal accident in Montana where the tread separated from a tire on a 1996 Ford Explorer. *Ford Motor*, 141 S. Ct. at 1023. The second suit was filed in Minnesota state court asserting products-liability, negligence, and breach-of-warranty claims that arose when a 1994 Crown Victoria rear-ended a snowplow and the air bag failed to deploy causing serious brain damage to the passenger. *Id.* Ford had not designed, nor manufactured, nor sold the cars at issue in the States where the lawsuits were filed. *Id.* at 1023.

Ford moved to dismiss both actions on nearly identical grounds to those advanced by BJC here: Ford claimed that "the state court (whether in Montana or Minnesota) had jurisdiction only if the company's conduct in the State had given rise to the plaintiff's claims. And according to Ford, that causal link exist[s]… only if the company had designed, manufactured, or—most likely—sold in the State the particular vehicle involved in the accident." *Id.* Like BJC's argument here, "[i]n Ford's view, …[j]urisdiction attaches only if the defendant's forum conduct gave rise to the plaintiff's claims." *Id.* at 1026. Compare BJC's Mem at 9 ("Plaintiffs do not allege any facts showing their alleged injury arose out of BJC's 'forum related activities.' "). But the Supreme Court rejected that argument - soundly.

In doing so, the Supreme Court found that this "causation-only approach finds no support in this Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities" and

---

[3] It was inappropriate for BJC to assert a lack of personal jurisdiction on these grounds without articulating a good-faith argument distinguishing *Ford Motor*. If BJC did not believe that there was a good-faith argument distinguishing *Ford Motor*, it should have omitted the argument from its brief. If BJC believed that such an argument exists, Plaintiffs should have been afforded the opportunity to respond. If it was too late in the day to change course, BJC should have asked for more time. Accordingly, if BJC argues that the Court lacks personal jurisdiction due to some distinction of *Ford Motor*, Plaintiffs seek leave to file a sur-reply.

"[n]one of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Id.* at 1026. Instead, "when a corporation has 'continuously and deliberately exploited [a State's] market, it must reasonably anticipate being haled into [that State's] court[s]' to defend actions 'based on' products causing injury there." *Id.* at 1027 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984)).[4]

Accordingly, under *Ford Motor*, specific jurisdiction exists where the defendant purposefully avails itself of the privilege of conducting activities within the forum State, *id.* at 1024, and plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum. *Id.* at 1025. And claims "arise out of or relate to" the defendant's contacts with the forum when the action is based on its products causing injury there. *Id.* at 1027.

As a result, the *Ford* resident-plaintiffs' allegations that they suffered in-state injury because of defective products that Ford extensively promoted, sold, and serviced in their state established a relationship among the defendant, the forum, and the litigation that was close enough to support specific jurisdiction. *Ford Motor*, 141 S. Ct. at 1032.

The facts here dictate the same result. BJC purposefully directed its activities to residents of the forum. Plaintiffs' complaint alleges that BJC treated more than 125,000 patients in Illinois in 2019. SAC at ¶ 17. BJC did not do so accidentally. It purposefully purchased and operated hospitals in Illinois and marketed treatment at its Illinois and Missouri based hospitals to Illinois residents like Plaintiffs.

It does not matter if BJC's sale of its product or its negligence occurred outside Illinois. *Ford Motor*, 141 S. Ct. at 1026 ("So the case is not over even if, as Ford argues, a causal test would put jurisdiction in only the States of first sale, manufacture, and design."). Like in *Ford Motor*, Plaintiffs allege

---

[4] This rule is not limited to products cases. The full quote from *Keeton* is: "Where, as in this case, respondent Hustler Magazine, Inc., has continuously and deliberately exploited the New Hampshire market, it must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine."

that BJC's out-of-state negligence caused them injuries in their home state and brought suit there.[5]
These contacts are relevant in assessing the link between the BJC's contacts and the Plaintiffs' suit.
*Ford Motor*, 141 S. Ct. 1031–32. BJC's extensive contacts with Illinois together with it being both
Plaintiffs' residence and where they felt their damages mean the relationship between BJC, Illinois,
and this suit is "close enough" to support specific jurisdiction. *Id.* at 1032.[6]

## II.    Plaintiffs Have Adequately Alleged They Suffered Injury and Damages.

BJC and Collaborative argue that Plaintiffs have failed to adequately allege that they were
harmed by their wrongdoing and thus lack injury in fact and damages. To do so, Defendants mis-
characterize Plaintiffs' claims and the state of the law.

Plaintiffs allege several injuries. Plaintiffs allege that they were damaged when BJC breached its
promise to keep their private health information private and only share the information with those
who can legally access them. They allege that by failing to live up to this promise, Plaintiffs received
services worth less than the services as they were represented. SAC at ¶¶ 4, 71, 135. Accordingly,
Plaintiffs are entitled to benefit of the bargain damages under the ICFA and MMPA. *Hanson-Sumin-
ski v. Rohrman Midwest Motors, Inc.*, 386 Ill. App. 3d 585, 595 (2008) ("The diminished value of a prod-
uct is a compensable injury in a consumer fraud cause of action."); *Geske v. PNY Techs., Inc.*, No. 19-
CV-05170, 2020 WL 7042887, at *17 (N.D. Ill. Nov. 30, 2020) ("When a plaintiff alleges that it pur-
chased something because of a fraudulent misrepresentation, there is actual injury when the plaintiff
suffers a pecuniary loss by receiving goods that are worth less than was promised."); *Benson v. Fannie
May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019) (Actual loss can be shown "if the
seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more

---

[5] Taylor also alleges that he purchased BJC's services in Illinois. (ECF No. 30 at ¶ 18.) BJC took Plaintiff Taylor's per-
sonal financial and health information in Illinois. (*Id.*) He paid his bills from BJC in Illinois. (*Id.*) BJC sent Taylor notice
of the breach to Illinois. (*Id.*)

[6] BJC claims that Plaintiffs "incorrect[ly] assume[]" that "Collaborative's inclusion in this lawsuit confers jurisdiction
over BJC." BJC's Mem. at 1. Plaintiffs have made no such assumption or argument.

than the actual value of the property.' ''); *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 313–14 (Mo. Ct. App. 2016) ("because Murphy alleged the mix was worth less than the product as represented, he stated an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule.")

Plaintiffs also allege that this promise gave rise to express or implied contract that BJC breached when it shared their private information with hackers. SAC ¶ 69. "When one party fails to honor its commitments, the other party to the contract suffers a legal injury sufficient to create standing even where that party seems not to have incurred monetary loss or other concrete harm." *J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 650–51 (7th Cir. 2014). Here, Plaintiffs further allege that BJC's breach of contract and negligence caused them consequential damages in the value of the time and money they have and will have to expend to protect themselves by conducting a damage assessment, obtaining credit reports, credit monitoring, obtaining insurance to indemnify against misuse of identity, and reimbursement of losses incurred as a proximate result of the breach. SAC at ¶ 24. Moreover, Plaintiffs further allege that as a result of the breach, they face substantial and imminent risk of identity theft and its attendant losses. SAC at ¶ 5.

Any of these allegations would be sufficient to establish standing; even an "identifiable trifle" can constitute an injury in fact. *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019) (holding that the time lost reading a junk fax before discarding it is a concrete injury) (quoting *United States v. SCRAP*, 412 U.S. 669, 689 n.14 (1973)). And the Seventh Circuit has repeatedly held that injuries like those alleged here are sufficient to establish standing in data breach cases.

But BJC argues that because Plaintiffs do not allege that they or class members have already suffered fraudulent charges or identity theft and do not say why the hackers broke into BJC's systems, any threat of future harm is too speculative to support Article III standing. BJC's Mem. at 13-16. It further argues that without such allegations supporting imminent harm, that mitigation expenses

7

cannot support standing. BJC's Mem. at 16-17. Finally, BJC claims that Plaintiffs' diminished value of services (benefit of the bargain) damages, which BJC characterizes as "overpayment for services," is too speculative and has been "foreclosed" by the Seventh Circuit. BJC's Mem. at 17-18. None of these arguments withstand scrutiny.

The Seventh Circuit has examined what constitutes sufficient allegations of injury in fact in the data breach context on four occasions: *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629 (7th Cir. 2007); *Remijas v. Neiman Marcus Grp.*, LLC, 794 F.3d 688 (7th Cir. 2015); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016), and *Dieffenbach v. Barnes & Noble, Inc.,* 887 F.3d 826 (7th Cir. 2018).

In *Pisciotta*, the defendant operated a marketing website where individuals seeking banking services could complete online applications by submitting their names, addresses, social security numbers, driver's license numbers, date of birth, mother's maiden name, and other information. *Pisciotta*, 499 F.3d at 631. A hacker obtained access to the information of tens of thousands of applicants. *Id.* After the defendant sent written notice to those affected, plaintiffs filed a putative class action asserting negligence and breach of express and implied contract claims and requesting compensation for credit monitoring services. *Id.*

Plaintiffs alleged that they were damaged by having "incurred expenses in order to prevent their confidential personal information from being used and will continue to incur expenses in the future." *Id.* at 632. Notably*, plaintiffs did not allege any direct financial loss to their accounts as a result of the breach or that they or any other member of the putative class already had been the victim of identity theft as a result of the breach. Id.*[7]

Nevertheless, the court found the plaintiffs had Article III standing. Judge Ripple wrote for the court (with Judges Wood and Evans) rejecting the reasoning of cases that hold that plaintiffs whose

---

[7] BJC does not discuss *Pisciotta* in its discussion of standing but relies on *Pisciotta* in its discussion of damages.

data has been compromised, but not yet misused, have not suffered an injury-in-fact and holding

that Article III's injury-in-fact requirement "can be satisfied by a threat of future harm or by an act

which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have

otherwise faced, absent the defendant's actions." *Pisciotta*, 499 F.3d at 634.

In *Remijas*, Neiman Marcus experienced a data breach that potentially exposed the credit card

data of customers who paid with cards during the previous year. *Remijas*, 794 F.3d at 690. The store

alerted all potentially affected customers and offered a credit monitoring service to each of them. *Id.*

Plaintiffs that had shopped at Neiman Marcus during the time the information was exposed sued

alleging negligence, breach of implied contract, unjust enrichment, unfair and deceptive business

practices, invasion of privacy, and violation of multiple state data breach laws. *Id.* at 690-91.

Judge Wood wrote for the court (with Judges Kanne and Tinder) holding that that while neither

plaintiff had to pay for any fraudulent charges on their cards, the increased risk of fraudulent charges

and identity theft and the time and expense incurred monitoring for fraudulent charges and identity

theft constituted an injury in fact sufficient to support Article III standing. *Remijas*, 794 F.3d 692-94.

The Court cited approvingly Judge Koh's *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197

(N.D. Cal. 2014) opinion discussing Article III standing where plaintiffs did not allege that con-

sumer information exposed in a data breach had been misused. Instead, plaintiffs only alleged that

stolen Adobe source code appeared on the Internet. *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d at

1206. Nevertheless, Judge Koh found the plaintiffs had Article III standing because the risk that

plaintiffs' personal data will be misused by the hackers who breached Adobe's network was immedi-

ate and very real.

> Plaintiffs allege that the hackers deliberately targeted Adobe's servers
> and spent several weeks collecting names, usernames, passwords,
> email addresses, phone numbers, mailing addresses, and credit card
> numbers and expiration dates. Plaintiffs' personal information was
> among the information taken during the breach. Thus, in contrast to

> Clapper, where there was no evidence that any of respondents' com-
> munications either had been or would be monitored under Section
> 702, here there is no need to speculate as to whether Plaintiffs' infor-
> mation has been stolen and what information was taken.

*Id.* at 1214–15.

The Seventh Circuit found this reasoning compelling, holding similarly: because "there is no need to speculate as to whether the Neiman Marcus customers' information has been stolen and what information was taken, [they] should not have to wait until hackers commit identity theft or credit-card fraud to give the class standing, because there is an 'objectively reasonable likelihood' that such an injury will occur. *Remijas*, 794 F.3d at 693 (cleaned up).

In *Lewert*, P.F. Chang's suffered a data breach that exposed some consumer credit- and debit-card information and sent notice of the data breach to all of its customers throughout the United States. *Lewert.*, 819 F.3d at 965. At the time, it did not know how many consumers were affected, whether the breach was general or limited to specific locations, or how long the breach lasted. *Lewert*, 819 F.3d at 965. Later P.F. Chang's determined that the breach had affected only 33 of its restaurants. *Id.* at 965.

Plaintiffs, customers of P.F. Chang's during the relevant time frame, brought suit alleging that they spent time and effort monitoring card statements and credit reports to ensure that no fraudulent charges had been made on that card and that no fraudulent accounts had been opened in their name. *Id.* at 965. However, P.F. Chang's investigation revealed that plaintiffs' data had not been exposed at all - *they had not dined at an affected restaurant*. *Id.* at 965 (emphasis added). Thus, plaintiffs' personal information could not have been exposed as a result of the data breach.

In *Lewert*, Judge Wood again wrote for the court (with Judges Bauer and Hamilton) and again held that while neither plaintiff had to pay for any fraudulent charges on their cards, the increased risk of fraudulent charges and identity theft and the time and expense incurred monitoring for fraudulent charges and identity theft constituted an injury-in-fact sufficient to support Article III standing.

*Lewert*, 819 F.3d at 967. In addressing P.F. Chang's argument that the plaintiffs' data was never exposed because they dined at the wrong restaurant, the court held that to be a factual dispute about the scope of the breach that does not destroy the plaintiffs' standing. *Lewert*, 819 F.3d at 968.

In *Dieffenbach*, Barnes & Noble suffered a data breach that exposed customers' names, card numbers and expiration dates, and PINs. *Dieffenach*, 887 F.3d at 827. The district court dismissed the case for lack of damages and the Seventh Circuit reversed.

Judge Easterbrook wrote for the court (with Judges Wood and Hamilton), and held that the "plaintiffs have standing because the data theft may have led them to pay money for credit-monitoring services, because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal, and because the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective. These injuries can justify money damages, just as they support standing." *Dieffenbach*, 887 F.3d at 828.

Contrary to BJC's claims (BJC's Mem. at 13), none of these cases hold that in order to have standing in a data breach case that plaintiffs must allege that they have suffered fraudulent charges or identify theft. To the contrary, they hold that plaintiffs "should not have to wait until hackers commit identity theft or credit-card fraud in order to give the class standing, because there is an 'objectively reasonable likelihood' that such an injury will occur." *Remijas*, 794 F.3d at 693; *Lewert*, 819 F.3d at 966. "Why else would hackers break in[]" if not to misuse the data. *Remijas*, 794 F.3d at 693. Accordingly, "[a]t this stage in the litigation, it is plausible to infer that the plaintiffs have shown a substantial risk of harm from the … data breach. … .Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities." *Remijas*, 794 F.3d at 693.

BJC argues these cases are distinguishable because "sensitive information was unmistakably targeted and stolen," the manner of the breach permitted "clear inferences regarding the thieves intent" and "actual fraud was observed closely after the incidents." BJC's Mem. at 15. But these facts do not

distinguish them from our case. Plaintiffs' complaint alleges that sensitive information was targeted and stolen. The complaint specifically provides that on March 6, 2020, three separate BJC employees succumbed to a phishing attack and allowed hackers to access their email accounts which contained the confidential records of thousands of BJC's patients. SAC at ¶ 2. These email accounts contained patients' names, medical record numbers, patient account numbers, dates of birth, provider names, visit dates, medications, diagnoses, and testing information, health insurance information, Social Security numbers, and driver's license numbers. SAC at ¶ 2.[8] And Plaintiffs allege that they received notice from BJC that their data was exposed in the breach. SAC at ¶ 2. The complaint also explains that Plaintiffs' health records are particularly valuable to hackers. SAC at ¶ 36. The information that was exposed is "all that [is] needed for identity thieves to create fake identities, fraudulently obtain loans and tax refunds and destroy a consumer's credit worthiness." SAC at ¶ 3. These facts allow for easy inferences. As the Court in *Remijas* asked, "[w]hy else would hackers break in[]" if not to misuse the data. *Remijas*, 794 F.3d at 693.

Likewise, these cases did not turn on the fact that other class members had already experienced fraud. In *Pisciotta,* the court notes that plaintiffs did not allege any direct financial loss to their accounts as a result of the breach or that they or any other member of the putative class already had been the victim of identity theft as a result of the breach. *Pisciotta,* 499 F.3d at 632. In *Remojas* and *Lewert*, none of the plaintiffs had out-of-pocket damages and the court only makes passing mention of the experiences of absent class members.

These cases also do not support BJC's claim that an "overpayment for services theory" has been "foreclosed" by the Seventh Circuit. BJC's Mem. at 17 (citing *Remijas*, 794 F.3d at 695 and *Lewert*,

---

[8] Given this allegation, Plaintiffs are at a loss for how BJC can complain that "Plaintiffs fail to plead that any sensitive information was even theoretically impacted by the Incident." BJC's Mem. at 16. Medical test results and social security numbers are sensitive information.

819 F.3d at 968). In *Remijas*, the court called the theory more problematic than plaintiff's other theo-
ries and said it was dubious of whether it would suffice but found consideration of the issue unnec-
essary. *Remijas*, 794 F.3d at 694. ("We need not decide whether they would have sufficed for stand-
ing on their own, but we are dubious."). Likewise, in *Lewert*, the Court similarly explained its skepti-
cism, but did not foreclose the argument: "[W]e do not decide whether any of these would be suffi-
cient injury for Article III standing, but we are skeptical." *Lewert*, 819 F.3d at 968.

But the reason the Seventh Circuit was dubious or skeptical is important here: in *Lewert* and
*Remijas*, the plaintiffs did not allege that any of the products were defective. *See Remijas*, 794 F.3d at
694–95 ("Plaintiffs do not allege any defect in any product they purchased."); *Lewert*, 819 F.3d at 968
("The plaintiffs here make no such allegations, and we are not inclined to push this theory beyond
its current scope.").

This is consistent with Illinois and Missouri law where to adequately plead benefit of the bargain
damages, a plaintiff must allege that she received diminished value. *See Hanson-Suminski v. Rohrman
Midwest Motors, Inc.*, 386 Ill. App. 3d 585, 595, 898 N.E.2d 194, 205 (2008) ("The diminished value of
a product is a compensable injury in a consumer fraud cause of action."); *Geske v. PNY Techs., Inc.*,
No. 19-CV-05170, 2020 WL 7042887, at *17 (N.D. Ill. Nov. 30, 2020) ("When a plaintiff alleges that
it purchased something because of a fraudulent misrepresentation, there is actual injury when the
plaintiff suffers a pecuniary loss by receiving goods that are worth less than was promised."); *Benson
v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019) (Actual loss can be shown "if
the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more
than the actual value of the property.' "); *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 313–14
(Mo. Ct. App. 2016) ("because Murphy alleged the mix was worth less than the product as repre-
sented, he stated an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain
rule.").

13

Accordingly, the Eighth Circuit has held that allegations that a plaintiff received diminished value establish Article III standing. In *Kuhns v. Scottrade, Inc.*, 868 F.3d 711 (8th Cir. 2017), plaintiff alleged that a portion of the fees paid in connection with his Scottrade account were used to meet Scottrade's contractual obligations to provide data management and security and when Scottrade breached those obligations, Kuhns received brokerage services of lesser value. *Id.* at 716. Plaintiff asserted that the difference between the amount he paid and the value of the services received is an actual economic injury that establishes injury-in-fact for his contract-related claims. *Id.* The Eighth Circuit agreed:

> Kuhns alleged that he bargained for and expected protection of his PII, that Scottrade breached the contract when it failed to provide promised reasonable safeguards, and that Kuhns suffered actual injury, the diminished value of his bargain. Whatever the merits of Kuhns's contract claim, and his related claims for breach of implied contract and unjust enrichment, he has Article III standing to assert them.

*Kuhns*, 868 F.3d at 716.

Likewise, in *Mitchell v. Blue Cross Blue Shield of N. Dakota*, 953 F.3d 529 (8th Cir. 2020), the Eighth Circuit found the denial of a contracted for benefit is a "particularized" injury that affects the participant in "a personal and individual way" "because the other party's breach devalues the services for which the plaintiff contracted and deprives them of the benefit of their bargain." *Mitchell*, 953 F.3d at 536. *See also K.A. by & Through B.W. v. Children's Mercy Hosp.*, No. 4:18-00514-CV-RK, 2019 WL 2144815, at *2 (W.D. Mo. May 16, 2019) (finding standing where plaintiff alleged that defendant breached its agreement with plaintiff when it failed to implement security measures which resulted in plaintiff suffering the diminished value of her bargain).

In *Carlsen v. GameStop, Inc.*, 833 F.3d 903 (8th Cir. 2016), the Eight Circuit found that plaintiff—who purchased a digital magazine subscription that included a privacy policy allegedly breached by

the publisher— suffered overpayment damages sufficient to support standing: "the difference between the value of the subscription that he paid for and the value of the subscription that he received, *i.e.*, a subscription with compromised privacy protection." *Id.* at 909.

Here, unlike the plaintiffs in *Lewert*, *Remijas*, and *Dieffenbach* but like the plaintiffs in *Kuhns*, *Mitchell*, and *Carlsen*, Plaintiffs allege that they contracted for services that included a promise by BJC to safeguard, protect, and not disclose their personal information. SAC at ¶ 21. Plaintiffs further allege that as a result of BJC's failure to provide this promised security, Plaintiffs and Class Members received a diminished value of the services they paid Defendants to provide. SAC ¶ 4, 71.

Defendants dispute Plaintiffs' allegations. They argue that BJC sold Plaintiffs medical services, not data security. BJC's Mem. at 18. But Plaintiffs' allegations are assumed to be true on this motion to dismiss. As the Court held in *Lewert*, Defendants' denial goes to the merits of Plaintiffs' claims – not to whether the claims are adequately pled. *See Lewert*, 819 F.3d at 965.

Plaintiffs' allegations of breach of contract by BJC, the delivery of services that were worth less than represented, consequential damages in the value of the time and money they have and will have to expend to protect themselves and that they face substantial and imminent risk of identity theft and its attendant losses are more than sufficient to satisfy their burden at this stage of the litigation. Plaintiffs have adequately pled standing and damages.

### III. The SAC States Claims for Which Relief May Be Granted[9]

#### a. Count I: Unjust Enrichment

In a footnote, Defendants claim that unjust enrichment is not an independent claim. BJC's Mem. at 19 n. 1 (*citing Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir. 2010) ("A claim of unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery.")).

---

[9] Plaintiffs concede dismissal of Count VII, Count VIII and Count IX of the Second Amended Complaint.

But that does not mean that Illinois plaintiffs cannot state claims for unjust enrichment. Unjust enrichment is a remedy that lies where a "defendant has unjustly retained a benefit to the plaintiff's detriment and ... the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014). "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). Unjust enrichment is also actionable under Missouri law. *See Roberts v. Roberts*, 580 S.W.3d 600, 605 (Mo. Ct. App. 2019). Before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states. *Barron v. Ford Motor Co. of Canada*, 965 F.2d 195, 197 (7th Cir. 1992). On issues about which there is no conflict, the court applies the law of Illinois, the forum state. *Int'l Administrators, Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 (7th Cir. 1985).

Plaintiffs plead facts establishing each element of their unjust enrichment claim under both Illinois and Missouri law. BJC received payment from Plaintiff and Class Members to perform services that included protecting, securing, keeping private, and not disclosing Plaintiffs' and Class Members' PHI. SAC at ¶ 52. Collaborative received value for accepting BJC's delegation to safeguard, protect, and not disclose their personal information. SAC at ¶ 54. Both Defendants retained Plaintiffs' and Class Members' payments. SAC at ¶ 55. Both Defendants failed to protect, secure, and keep private Plaintiffs' and Class Members' PHI and disclosed Plaintiffs' and Class Members' PHI. SAC at ¶ 55. Plaintiffs state a claim for unjust enrichment.

### b.  Count II: Breach of Contract

BJC first argues that Plaintiffs' breach of contract claim should be dismissed because, even though it admits that a contract existed, it argues that Plaintiffs failed to plead the formation of a contract that included data security rather than just health care services. BJC's Mem. at 21. However, the complaint plainly alleges that Plaintiffs paid money to BJC in exchange for services, which included promises to secure, safeguard, protect, keep private, and not disclose Plaintiffs' PHI. SAC at ¶ 60. BJC memorialized these promises in writing. SAC at ¶ 61. Further, BJC promised to comply with all HIPAA standards and to ensure Plaintiffs' PHI was protected, secured, kept private, and not disclosed. SAC at ¶ 63. The complaint alternatively alleges that if these terms were not express, there was an implied contract because BJC promised to comply with all HIPAA standards and regulations and to ensure Plaintiffs' PHI was secured, safeguarded, kept private, protected, and not disclosed to third parties. SAC at ¶ 64. These allegations plausibly allege BJC had a contractual obligation to, among other things, protect Plaintiffs' PHI.

BJC then argues Plaintiff failed to alleged a breach of the contract. BJC's Mem. at 22. This too is false. The complaint alleges that BJC did not secure, safeguard, protect, and keep private Plaintiffs' PHI and disclosed their PHI to third parties. SAC at ¶ 69. The complaint further alleges that BJC allowed third parties to access, copy, and transfer Plaintiffs' health information and PHI. SAC at ¶ 70. These allegations plausibly allege breach of BJC's promises safeguard and not to disclose Plaintiffs' PHI to any unauthorized person.

Third, BJC argues that because HIPAA requires that it not disclose Plaintiffs' PHI, this pre-existing duty cannot serve as consideration for a contract. BJC's Mem. at 22. This is also incorrect. First, BJC is wrong on the law. Even where a contract includes a promise to perform a pre-existing duty, that promise may be enforced against the promisor. 17A Am. Jur. 2d Contracts § 149

("[A]lthough a promise to do a thing that the promisor is legally bound to do is not generally sufficient consideration to support a reciprocal undertaking by the promisee, such promise may be enforced against the promisor, notwithstanding that its enforcement compels the performance of what is already a legal obligation."); 3 Williston on Contracts § 7:41 (4th ed.) ("Although a promise of something which the promisor is under a legal duty to perform cannot be valid consideration for a return promise … there is no reason why such a promise should not itself be enforceable if supported by sufficient consideration.").

BJC is also wrong on the facts. The parties' contract, which BJC admits required it to provide medical care to plaintiffs (BJC's Mem. at 21), also required Plaintiffs to pay for that care. SAC at ¶ 20.  "Each party conferred a benefit on the other, and their mutual benefit is consideration." *Lo v. Provena Covenant Med. Ctr.*, 826 N.E.2d 592, 598-99 (Ill. App. Ct. 2005). The fact that the Agreement contained other terms, "many of them mandated by law," does not render the Agreement unenforceable for lack of consideration. *Id.*

Fourth, BJC argues that Plaintiffs have not pleaded facts establishing damages arising from the breach. Not only have Plaintiffs satisfied the requirements to plead damages, *see* Section II *infra*, damages are not required to state a cause of action for breach of contract. "Injury is not required for a breach of contract. The victim of such a breach, even if not injured, is entitled to an award of nominal damages." *Dominion Nutrition, Inc. v. Cesca*, 467 F. Supp. 2d 870, 882 (N.D. Ill. 2006) (Posner, J. sitting by designation).

### c.  Count III and V: Negligence and Negligence Per Se

Defendants contend that Plaintiffs' "tort claims" are barred by the economic loss doctrine. BJC's Mem. at 23. However, "[t]here are a number of exceptions to the *Moorman* doctrine, each rooted in the general rule that '[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty.' " *Wigod v. Wells Fargo Bank, N.A.,*

673 F.3d 547, 567 (7th Cir. 2012) (quoting *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137(1994)). To determine whether the *Moorman* doctrine bars tort claims, the key question is whether the defendant's duty arose by operation of contract or existed independent of the contract. *Wigod*, 673 F.3d at 567.

Plaintiffs' tort claims arise independently of the parties' contract. Plaintiffs allege that BJC had statutory and common law duties to protect Plaintiffs' confidential information. SAC at ¶¶ 26, 74. A health care provider has a fiduciary duty of confidentiality not to disclose any medical information received in connection with the treatment of a patient. *Petrillo v. Syntex Lab'ys, Inc.,* 148 Ill. App. 3d 581, 593 (1986) ("[P]atients in Illinois possess … the right to rely on physicians to faithfully execute their ethical duties and thereby protect the confidentiality of the physician-patient relationship."); *Brandt v. Med. Defense Assocs.*, 856 S.W.2d 667, 674 (Mo. banc 1993)  ("a physician has a fiduciary duty of confidentiality not to disclose any medical information received in connection with the treatment of the patient.'). As BJC argues in its memorandum, "[Plaintiffs'] entire negligence *per se* claim is predicated on the notion that BJC's security failures were statutory failures." BJC's Mem. at 22. "Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 162 (1994). Accordingly, Plaintiffs' tort claims are not barred by the economic loss rule.

Similarly, under Missouri law, the economic loss doctrine does not apply when, as here, there is a special relationship between the plaintiff and the defendant or when, as here, the defendant rendered professional services to the plaintiff. *K.A. by & Through B.W. v. Children's Mercy Hosp.*, 4:18-00514-CV-RK, 2019 WL 2144815, at *5 (W.D. Mo. May 16, 2019) (recognizing, in data breach claim against Missouri hospital, that the economic loss doctrine does not apply when the claim alleges a

19

fiduciary relationship or the rendering of professional services). *See also Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 193 (Mo. Ct. App. 2010) (denying summary judgment under economic loss doctrine because there was a question of fact about whether there was a special relationship between auto dealer and its floor-plan financing provider, provider's employee, and insurance broker/agent that provided insurance to dealership on its inventory); *Westfield, LLC v. IPC, Inc.*, 816 F. Supp. 2d 745, 750 (E.D. Mo. 2011) ("The economic loss doctrine, however, does not apply and preclude tort liability in an action based on the negligent rendition of services by a professional."). Here, BJC provided professional services—health care services—to Plaintiffs. Therefore, the economic loss doctrine does not bar Plaintiffs' tort claims under either Illinois or Missouri law.

### d.  Count IV: Illinois Consumer Fraud Act

BJC challenges Plaintiffs' Illinois consumer fraud claims are two grounds. First, it argues that the ICFA does not apply extraterritorially. BJC's Mem. at 20. Although that is a generally accurate statement, the law is more nuanced than that. A plaintiff may pursue a ICFA claim "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 187 (2005). There is "no single formula or bright-line test for determining whether a transaction occurs within this state. Rather, each case must be decided on its own facts." *Id.*

Plaintiff Taylor was a patient at BJC's Illinois hospitals. SAC at ¶ 18. He received BJC's misrepresentations in Illinois, acted in reliance on those representations in Illinois, and handed over his PHI and then felt his injury in Illinois. *Id.* "If, for example, the bulk of the circumstances that make up a fraudulent transaction occur within Illinois, and the only thing that occurs out-of-state is the injury or deception, it seems to make little sense to say that the fraudulent transaction has occurred outside Illinois." *Avery*, 216 Ill. 2d at 186. There are sufficient allegations to allow for application of the ICFA at this stage of the litigation.

Both BJC and Collaborative argue that Plaintiffs' ICFA allegations do not satisfy Rule 9(b). BJC's Mem. at 20; Collaborative's Mem. at 5. But recently, an Illinois district court found that similar allegations were sufficient.

> Even assuming arguendo that the Rule 9(b) standard applies, Plaintiffs have alleged enough facts to establish who (the Defendant), what and how (security was inadequate to protect against a data breach and the information was withheld), when (the data breach occurred between November 2018 and August 2019), and where (respective Plaintiffs' states).

*Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 769 (C.D. Ill. 2020).

Like the complaint in *Purdue*, Plaintiffs here have alleged the who (BJC and Collaborative, SAC at ¶ 92), what and how (failed to protect Plaintiffs and class members' PHI, SAC at ¶ 92) when (March 6, 2020, SAC at ¶ 2) and where (at BJC's Missouri hospitals, SAC at ¶ 42).[10]  These allegations satisfy Rule 9(b).

Moreover, this conduct is actionable under the ICFA. In construing the ICFA, courts are to give consideration to the interpretations of the Federal Trade Commission and to federal courts' interpretations of Section 5(a) of the Federal Trade Commission Act. 815 Ill. Comp. Stat. Ann. 505/2. "[T]he FTC has brought many … cases in which they have taken the position that failure to take adequate steps to safeguard consumer information is an unfair trade practice." Jolina C. Cuaresma, *Identity theft and security breaches*, Consumer Protection and the Law § 13:19 (Clark Boardman Callaghan 2020) (collecting cases). And in *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 247 (3d Cir. 2015), the Third Circuit agreed that cybersecurity practices that unreasonably and unnecessarily exposed consumer's personal data to unauthorized access and theft violate the FTC's prohibition of unfair business practices. Plaintiffs state a claim under the ICFA.

---

[10] The only of these facts pleaded on information and belief is the where.

### e.   Count VI: Breach of Covenant of Good Faith and Fair Dealing

In a footnote, BJC claims that breach of the covenant of good faith and fair dealing is not an in-dependent claim. BJC's Mem. at 19 n. 1 (citing *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 627 (7th Cir. 2002) ("the [Illinois Supreme] Court held that breach of the covenant of good faith and fair dealing is not an independent cause of action under Illinois law except "in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policy holder.")). However, it is under Missouri law. *Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1125 (8th Cir. 2006) (claim of breach of duty of good faith and fair dealing not necessarily inconsistent with or du-plicative of breach of contract claim). "Breach of the implied duty of good faith and fair dealing is a contract action." *Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180, 188 (Mo. Ct. App. 2017). "A party breaches the covenant of good faith and fair dealing if it exercises a judg-ment conferred by the express terms of the agreement in a manner that evades the spirit of the agreement and denies the other party the expected benefit of the agreement." *Id.*

In contract actions, Illinois applies the most significant contacts rule to determine which law ap-plies. *Illinois Tool Works v. Sierracin Corp.*, 134 Ill. App. 3d 63, 69 (1st Dist. 1985). The rights of the parties are determined by the local law of the state which that has the most significant relationship to the transaction and parties. Contacts to be evaluated in connection include the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation and business of the parties. *Id.*

With respect to those class members like Sweet who were patients of BJC's Missouri hospitals, nearly all of these factors point to the application of Missouri law. The place of contracting, negotia-tion, performance, and subject matter of the contract would all be at the Missouri hospital. More-over, Plaintiffs' data was housed in Missouri and was to be protected in Missouri. Both BJC and Col-

laborative are domiciled in Missouri. For those reasons, Missouri has the most significant relationship and Missouri law should apply to Plaintiffs' contract claims. And thus, under Missouri law, Plaintiffs have stated a cause of action for breach of the covenant of good faith and fair dealing.

With respect to those class members like Taylor who were patients of BJC's Illinois hospitals, additional discovery will be needed before a choice of law analysis can be determined. Plaintiffs will need to know, at the least, where Taylor's financial payments were sent to, where Taylor's billing was processed, where Taylor's insurance negotiations took place, where Taylor's private health information was transferred, etc. Nonetheless, even without additional discovery, it is more than plausible that Missouri law will apply to Plaintiffs like Taylor's claims for breach of covenant of good faith and fair dealing.

### f. Count X: Missouri Merchandising Practices Act

BJC moves to dismiss Plaintiffs' MMPA claims for two reasons. First, BJC argues that to be actionable under the MMPA, the unlawful act must occur in relation to a sale of merchandise and BJC sells medical services. BJC's Mem. at 25. But the MMPA also applies to the sale of services. *Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 842–43 (Mo. Ct. App. 2015) ("The MMPA makes it unlawful to use unfair or deceptive practices "in connection with" the sale of merchandise, including services.").

The use of an unlawful practice is a violation of the MMPA "whether committed before, during or after the sale," so long as it was made "in connection with" the sale. *Watson v. Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404, 407 (Mo. 2014). And an act is "in connection with" the sale of services when it is a service the seller agreed to sell or the buyer agreed to buy when the parties entered into the transaction. *Id.* at 408. Plaintiffs allege that "Plaintiffs . . . are customers of BJC who provided payment to BJC for certain services, part of which was intended to pay the administrative costs of securing their personal and health information." (SAC at ¶ 20.)

Second, BJC argues that Plaintiffs have not pled an "ascertainable pecuniary loss." Missouri courts apply the benefit-of-the-bargain rule to determine whether a plaintiff has suffered an ascertainable loss. *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 758 (W.D. Mo. 2015). Under this rule as applied to MMPA claims, a plaintiff can recover damages for "the difference between the actual value of the property and what its value would have been if it had been as represented." *Id.* See also *K.A. by & Through B.W. v. Children's Mercy Hosp.*, 4:18-00514-CV-RK, 2019 WL 2144815, at *4–5 (W.D. Mo. May 16, 2019).

Plaintiffs allege that as a result of BJC's unlawful practices, they suffered by paying more for medical record privacy protections than they otherwise would have and by paying for medical record privacy protections that they did not receive. SAC at ¶ 4. Accepting the well-pled allegations as true and viewing them in Plaintiffs' favor, as the Court must, Plaintiffs have plausibly alleged an ascertainable loss. *See Kelly*, 81 F. Supp. 3d at 759 ("Plaintiff need only allege that the actual value of the product as purchased was less than the value of the product as represented to state a claim for an ascertainable loss.") *See also K.A. by & Through B.W. v. Children's Mercy Hosp.*, 4:18-00514-CV-RK, 2019 WL 2144815, at *4–5 (W.D. Mo. May 16, 2019) (holding under Missouri law in data breach case that plaintiff pleaded ascertainable loss.)

## CONCLUSION

For the reasons stated, this Court should deny Defendants' motion to dismiss the Second Amended Complaint and grant such other relief as is proper.

Dated:  May 20, 2021                       Respectfully Submitted,

                                           /s/ Tyler J. Schneider
                                           TORHOERMAN LAW LLC
                                           Kenneth J. Brennan
                                           Tyler Schneider
                                           210 South Main Street
                                           Edwardsville, IL 62025
                                           (618) 656-4400
                                           kbrennan@thlawyer.com

tyler@thlawyer.com
&
WALTON TELKEN, LLC
Troy E. Walton
241 N. Main Street
Edwardsville, IL 62025
(618) 307-9880
twalton@waltontelken.com
&
Zigler Law Group, LLC
Aaron M. Zigler
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
312-673-8427
aaron@ziglerlawgroup.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Leaha Sweet and Bradley Dean Taylor, on behalf of themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 20-CV-947-NJR |
| v. | ) ) ) | |
| BJC Heath System d/b/a BJC Healthcare, and BJC Collaborative, LLC, | ) ) ) ) | |
| Defendants. | ) ) ) | |

---

## CERTIFICATE OF SERVICE

---

I hereby certify that on May 20, 2021, I electronically filed the forgoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record, including the following:

- Matthew C. Baisley
- Kenneth J. Brennan
- Paul G. Karlsgodt
- Matthew David Knepper

- Tyler J. Schneider
- Russell K. Scott
- Troy E. Walton

/s/ *Tyler J. Schneider*
TORHOERMAN LAW LLC
Kenneth J. Brennan
Tyler Schneider
210 South Main Street
Edwardsville, IL 62025
(618) 656-4400
kbrennan@thlawyer.com
tyler@thlawyer.com
*One of the Attorneys for Plaintiffs*